# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORSAT INTERNATIONAL, INC., <br><br> Plaintiff, <br> vs. <br> B.I.P. CORPORATION, <br><br> Defendant. | CASE NO. 12cv674-WQH-NLS <br><br> ORDER |
| B.I.P. CORPORATION, <br><br> Counterclaimant, <br> vs. <br> NORSAT INTERNATIONAL, INC.; IK TECH; IGOR KAZHDAN aka ALEX STANTON, an individual, and DOES 1 through 20, inclusive, <br><br> Counter-Defendants. | |
| And Related Counterclaims. | |

HAYES, Judge:

The matters before the Court are (1) the Motion to Dismiss First Amended Counterclaim ("Motion to Dismiss"), filed by Counter-Defendants IK Tech and Igor Kazhdan (ECF No. 41); and (2) the Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for Preliminary Injunction"), filed by Counterclaimant B.I.P. Corporation (ECF No. 45).

**I.      Background**

On March 30, 2012, Plaintiff Norsat International, Inc. ("Norsat") initiated this

action by filing a Complaint against Defendant B.I.P. Corporation ("B.I.P."). (ECF No. 1). The Complaint alleged that B.I.P. sold satellite and cable communication equipment that was falsely labeled with Norsat's trademarks. *Id*. ¶ 11.

On October 3, 2012, B.I.P. filed a Counterclaim against Norsat, IK Tech and Igor Kazhdan. (ECF No. 12).

On November 13, 2012, IK Tech and Igor Kazhdan (collectively, "IK Tech parties") filed a Counterclaim against B.I.P., Actox Corporation ("Actox") and Nikita Hatset. (ECF No. 19). On December 3, 2012, the IK Tech parties filed an Amended Counterclaim against B.I.P., Actox and Nikita Hatset. (ECF No. 23). The IK Tech parties allege that Kazhdan worked as an employee of B.I.P. and Actox from 2004 through "late 2010 to early 2011." *Id*. ¶ 11. The IK Tech parties allege: "In 2007, B.I.P. and Actox, on the direction of their principal owner Al Hatset, forced Kazhdan to incorporate IK Tech for the purpose of intentionally misclassifying Kazhdan as a 1099 independent contractor. B.I.P. and Actox forced Kazhdan to accept payment for work performed for B.I.P. and Actox through IK Tech so that B.I.P. and Actox could save money and avoid paying taxes." *Id*. ¶ 13. The IK Tech parties allege: "In early 2011, after Kazhdan had left the employ[] of B.I.P./Actox, Nikita Hatset began contacting IK Tech clients and making false and derogatory comments and written communications that [Nikita] Hatset knew to be untrue regarding IK Tech and Kazhdan."[1] *Id*. ¶ 15. The IK Tech parties assert the following causes of action against B.I.P., Actox and Nikita Hatset: (1) violation of Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.; (2) overtime violations (Cal. Labor Code § 510); (3) failure to provide itemized wage statements (Cal. Labor Code § 226); (4) failure to provide and/or authorize meal periods (Cal. Labor Code § 512); (5) defamation (Cal. Civ. Code § 46(1)); and (6) unfair competition (Cal. Bus. & Prof. Code § 17200).

On January 25, 2013, the Court granted a joint motion to dismiss filed by Norsat

---

[1] Nikita Hatset was an employee of B.I.P., and is the son of B.I.P.'s principal owner, Al Hatset. (Kazhdan Decl. ¶ 7, ECF No. 47-1).

1  and B.I.P., dismissing all of Norsat's claims against B.I.P. with prejudice and
2  dismissing all of B.I.P.'s counterclaims against Norsat with prejudice. (ECF No. 29).
3       On May 24, 2013, B.I.P. filed a First Amended Counterclaim against IK Tech
4  and Igor Kazhdan. (ECF No. 38).

### A. Allegations of the First Amended Counterclaim

B.I.P. specializes in reselling and distributing components used in the satellite and telecommunications industry. *Id*. ¶ 10. Kazhdan "worked for B.I.P from 2004 to 2010," and Kazhdan "incorporated his company, IK Tech, in 2007." *Id*. ¶ 12. "In 2010, B.I.P. cut ties with Kazhdan. IK Tech and Kazhdan began to sell Norsat products to B.I.P. customers. Many of those same customers stopped buying products from B.I.P." *Id*. ¶ 13. "On information and belief, B.I.P. believes that IK Tech and Kazhdan made false and derogatory comments about B.I.P. to its former customers to gain their business." *Id*. "IK Tech and Igor Kazhdan are using B.I.P. created customer lists to lure customers away from B.I.P. to purchase their satellite needs with IK Tech instead." *Id*. ¶ 14. "Despite B.I.P.'s repeated requests, [IK Tech and Kazhdan] have and continue to use B.I.P.'s customer lists in an attempt to usurp all of B.I.P.'s clientele." *Id*. ¶ 15.

B.I.P. asserts the following causes of action against IK Tech and Kazhdan: (1) unfair competition under 15 U.S.C. §1125(a); (2) defamation (Cal Civ. Code § 46(1)); (3) unfair competition (Cal. Bus. & Prof. Code § 17200); (4) misappropriation in violation of the California Uniform Trade Secrets Act ("CUTSA"); and (5) intentional interference with economic advantage.

### B. Motion to Dismiss

On June 14, 2013, the IK Tech parties filed the Motion to Dismiss. (ECF No. 41). The IK Tech parties contend that the first, second, third and fifth causes of action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The IK Tech parties contend that B.I.P.'s defamation claim should be dismissed because it "is not pled with the required specificity." (ECF No. 41-1 at 5). The IK Tech parties contend that the "first, third and fifth claims are preempted by the ... CUTSA." *Id*.

On July 3, 2013, B.I.P. filed an opposition to the Motion to Dismiss. (ECF No. 42). B.I.P. contends that the First Amended Counterclaim alleges sufficient facts to state a claim for defamation, and none of the claims are preempted by the CUTSA.

On July 11, 2013, the IK Tech parties filed a reply. (ECF No. 43).

### C. Motion for Preliminary Injunction

On August 15, 2013, B.I.P. filed the Motion for Preliminary Injunction. (ECF No. 44). B.I.P. contends that the IK Tech parties, "without B.I.P.'s consent or authorization, have engaged and continue to engage in a course of conduct consisting of using B.I.P.'s confidential customer and supplier lists for its own purpose. [The IK Tech parties]' conduct is causing, and will continue to cause, irreparable harm to B.I.P.'s reputation and goodwill." *Id*. at 6. B.I.P. requests that the Court issue: "(i) a temporary restraining order and preliminary injunction against [the IK Tech parties] enjoining the use of any B.I.P. customer lists, supplier lists or other trade secrets without B.I.P.'s authorization; (ii) an injunction prohibiting [the IK Tech parties] from soliciting B.I.P. customers; and (iii) return of all B.I.P. confidential documents, including but not limited to documents showing customer names, supplier names, prices, and contact information." *Id*.

In support of the Motion for Preliminary Injunction, B.I.P. submits two declarations and two exhibits. B.I.P.'s attorney, David L. Skilling, submits a declaration stating that, at a July 2013 deposition, Khatset "produced a document showing a detailed customer list of B.I.P., complete with customer names, order information and pricing. B.I.P. Corporation did not produce these documents in this suit nor have they allowed [the IK Tech parties] access to these documents at any given point in time." (Skilling Decl. ¶ 4, ECF No. 44-1). The document, which is attached to the Motion for Preliminary Injunction as Exhibit B, lists sales apparently made by B.I.P. during July of 2010. (ECF No. 44-4).

Al Hatset, B.I.P.'s owner, submits a declaration which states that "Kazhdan contracted with B.I.P from 2004 to 2011. When he began conducting business with

B.I.P. in 2004, Kazhdan signed a confidentiality and non-disclosure agreement." (Al Hatset Decl. ¶ 4, ECF No. 44-2).[2] Al Hatset states: "In 2010, B.I.P. cut ties with Kazhdan. Since that time, IK Tech and Kazhdan have began to sell products to B.I.P. customers. Many of those same customers stopped buying products from B.I.P., especially because [the IK Tech parties] would make derogatory statements and undercut B.I.P.'s prices." *Id.* ¶ 5. Al Hatset states that "B.I.P. has also learned that IK Tech and Igor Kazhdan are using B.I.P.-created customer lists and supplier lists to lure customers away from B.I.P. to purchase their satellite needs with IK Tech instead." *Id.* ¶ 6. Al Hatset states:

> For example, IK Tech has repeatedly sent emails to former and current customers of B.I.P. by introducing itself as a former employee of B.I.P. The emails then proceed to list prices significantly lower than B.I.P.'s standard pricing in an attempt to lure away B.I.P.'s customers. B.I.P. has received numerous versions of this email forwarded on by its clients. B.I.P. has also recently discovered that [the IK Tech parties] are using B.I.P.'s supplier lists. [The IK Tech parties] have been using these lists to purchase the same products as B.I.P. and sell to its customers.

*Id.* ¶ 7. Al Hatset states that, "B.I.P. has recently learned that [the IK Tech parties] have retained — and likely used — a B.I.P. customer list, which they produced at a recent deposition." *Id.* ¶ 8. Al Hatset states: "Despite B.I.P.'s repeated requests, [the IK Tech parties] have and continue to use B.I.P.'s customer lists in an attempt to usurp all of B.I.P.'s clientele." *Id.* ¶ 9.

On September 3, 2013, the IK Tech parties filed an opposition to the Motion for Preliminary Injunction, accompanied by evidence. (ECF No. 47). The IK Tech parties contend that B.I.P. cannot show a likelihood of success on the merits of its claims, and B.I.P.'s evidence consists of "pure speculation and conjecture [which] does not demonstrate imminent, 'real and concrete' irreparable injury to B.I.P." *Id.* at 11.

Kazhdan submits a declaration which states: "In 2007, Mr. [Al] Hatset demanded that myself and other employees form our own companies so that he could avoid paying

---

[2] Attached to the Motion for Preliminary Injunction as Exhibit A is a "Confidentiality, Non-Competition and Proprietary Information Agreement" dated August 30, 2004 and signed by Kazhdan. (ECF No. 44-3).

Federal and State taxes related to our employment.... [A]t Mr. Hatset's direction I formed a company called IK Tech." (Kazhdan Decl. ¶ 5, ECF No. 47-1). Kazhdan states: "In 2007, Mr. Hatset and I entered into a modified employment agreement wherein Mr. Hatset agreed to pay IK Tech 5% of all gross sales for B.I.P. Corporation in exchange for my work in obtaining new customers and selling products. However, IK Tech never entered into any confidentiality agreement (or any other written agreement) with B.I.P., Actox or Mr. Hatset. It was always my understanding that since I was forced to call myself a 'contractor,' form my own company and pay my own taxes that new customers I personally obtained after IK Tech was formed were IK Tech customers – not direct B.I.P. customers." *Id.* ¶ 6. Kazhdan states:

> After 2007, myself and other 'employees'/'contractors' ... were required to keep track of sales by B.I.P. for purposes of our commission. I was never given any type of wage statement, 1099 statement or anything at all whatsoever except for the commission sales earnings statement that was used to determine how much myself and all other 'contractors' were to be paid each month. These statements which Mr. Hatset and B.I.P. now call their 'customer list' were actually my wage statements.... These wage statements were the only document showing how I was to be paid or how I got paid for my work that I ever received from B.I.P., Actox or Mr. Hatset after 2007. I kept these documents in my records because they were necessary for tax purposes and general recordkeeping after I ultimately stopped working with Mr. Hatset, B.I.P. and Actox. I have never used any information on these document[s] to improperly contact B.I.P. customers or for use in any type of price advantage.

*Id.* ¶ 7.

On September 10, 2013, B.I.P. filed a reply brief in support of the Motion for Preliminary Injunction. (ECF No. 48).

On September 27, 2013, the Court conducted oral argument on the Motion for Preliminary Injunction. (ECF No. 49).

## II. Discussion

### A. Motion to Dismiss

#### 1. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pac. Police Depot*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

### 2. Defamation

The IK Tech parties move for the dismissal of B.I.P.'s second cause of action for defamation. The IK Tech parties contend: "B.I.P.'s defamation claim is not pled with the required specificity. B.I.P. must be required to specify what the allegedly defamatory statement was, whether it was written or spoken and to whom it was directed or published. As pled, [the IK Tech parties] do not have sufficient notice of the alleged defamation to defend B.I.P.'s claims against them." (ECF No. 41-1 at 5). The IK Tech parties contend that B.I.P.'s allegation of a defamatory statement made "on information and belief," *see* First Am. Counterclaim ¶ 24, ECF No. 38, is insufficient to state a claim, and "[c]learly B.I.P. has no basis in fact whatsoever to support its claim." (ECF No. 41-1 at 5). B.I.P. contends that the First Amended Counterclaim alleges facts sufficient to state a defamation claim and the IK Tech

parties' "'information and belief' argument fails." (ECF No. 42 at 6).

"Under California law, defamation 'involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage.'" *Price v. Stossel*, 620 F.3d 992, 998 (9th Cir. 2010) (quoting *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007)). "Publication, which may be written or oral, is defined as a communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (2000). "Under California law, the defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement. Even under the liberal federal pleading standards, general allegations of the defamatory statements that do not identify the substance of what was said are insufficient." *Scott v. Solano Cnty. Health & Soc. Servs. Dep't*, 459 F. Supp. 2d 959, 973 (E.D. Cal. 2006) (citations omitted); *see also Gilbert*, 147 Cal. App. 4th at 34 ("[T]he general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint."); *cf. Okun v. Superior Court*, 29 Cal. 3d 442, 458 (1981) ("Nor is the allegation defective for failure to state the exact words of the alleged slander.... [W]e conclude that slander can be charged by alleging the substance of the defamatory statement.").

The second cause of action for defamation alleges:

> Upon information and belief, on or about February 2012, ... IK Tech and Kazhdan told various third parties that B.I.P. had counterfeited Norsat's products.
>
> These words were slanderous because they accused B.I.P. of committing the crime of counterfeiting, trademark infringement, and unfair competition. Further, stating that B.I.P. counterfeits products has a tendency to injure B.I.P. in its occupation because its customers would not want to buy from B.I.P. if they believe B.I.P. counterfeits products from other companies.
>
> The words uttered were a false statement because B.I.P. has not counterfeited any of Norsat's products.
>
> The words carried a defamatory meaning because they allege that B.I.P. counterfeited Norsat's goods and therefore, consumers should not buy

> products from B.I.P. because they are not trustworthy.
>
> As a result of the above-described words, B.I.P. has suffered general damages to its reputation.
>
> As a further proximate result of the above-described words, B.I.P. has suffered the following special damages: injury to B.I.P.'s business, trade, profession, and occupation, all to its injury in an amount to be determined at trial.
>
> The above-described words were spoken by ... IK Tech and Kazhdan with malice in that it knew that B.I.P. had not counterfeited Norsat's products.

(First Am. Countercl. ¶¶ 24-30, ECF No. 38).

The Court finds that the First Amended Counterclaim adequately alleges the substance of the allegedly defamatory statement, i.e., that "B.I.P. had counterfeited Norsat's products." *Id.* ¶ 24. The IK Tech parties have failed to cite to any legal authority requiring that the pleading identify the specific third person to whom the allegedly defamatory statement was directed. *Cf. Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999) (requiring that the defamatory communication must be made "to some third person"). The IK Tech parties have failed to cite to any authority indicating that an allegation based "upon information and belief" is insufficient to state a claim upon which relief can be granted. *Cf. Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer an [element of a cause of action] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]."). The Court finds that the First Amended Counterclaim adequately alleges a claim for defamation. The Motion to Dismiss the second cause of action is denied.

### 3. CUTSA Preemption

The IK Tech parties move for the dismissal of the following causes of action: first cause of action for unfair competition pursuant to 15 U.S.C. § 1125(a), third cause of action for unfair competition pursuant to California Business & Professions Code § 17200, and fifth cause of action for intentional interference with economic advantage. The IK Tech parties contend that these causes of action "all share the same 'identical nucleus of facts' as outlined in B.I.P.'s fourth claim for misappropriation of trade

1  secrets. As such, B.I.P.'s first, third and fifth claims should be dismissed by way of
2  CUTSA preemption." (ECF No. 41-1 at 6). B.I.P. contends that the first cause of
3  action "is based in federal law and thus cannot be preempted by state laws such as
4  CUTSA"; the third cause of action is not preempted because it "is based on [the IK
5  Tech parties'] derogatory comments, not trade secrets violations"; and the fifth cause
6  of action is not preempted because it "is based in contract." (ECF No. 42 at 8).

7  "CUTSA preempts common law claims that are based on misappropriation of a
8  trade secret." *Ali v. Fasteners for Retail, Inc.*, 544 F. Supp. 2d 1064, 1070 (E.D. Cal.
9  2008) (quotation omitted). CUTSA exempts certain claims from the scope of its
10 preemption: "(1) contractual remedies, whether or not based upon misappropriation of
11 a trade secret, (2) other civil remedies that are not based upon misappropriation of a
12 trade secret, or (3) criminal remedies...." Cal. Civ. Code § 3426.7(b). "Courts have
13 held that where a claim is based on the identical nucleus of facts as a trade secrets
14 misappropriation claim, it is preempted by CUTSA." *Ali*, 544 F. Supp. 2d at 1070
15 (quotation omitted). "The preemption inquiry for those causes of action not specifically
16 exempted by § 3426.7(b) focuses on whether other claims are no more than a
17 restatement of the same operative facts supporting trade secret misappropriation. If
18 there is no material distinction between the wrongdoing alleged in a CUTSA claim and
19 that alleged in a different claim, the CUTSA preempts the other claim." *Id*. (quotation
20 omitted); *see also PQ Labs, Inc. v. Yang Qi*, No. C12-450, 2012 WL 2061527, at *5
21 (N.D. Cal. June 7, 2012) (same).

22 The first cause of action alleges a violation of the Lanham Act, 15 U.S.C. § 1125.
23 "[I]t is fundamental that state law cannot preempt a federal statute.... There is
24 absolutely no authority for [the] erroneous contention that CUTSA in any way preempts
25 federal law." *Sign Designs, Inc. v. Johnson United, Inc.*, No. 2:11-cv-313, 2011 WL
26 1549396, at *2 (E.D. Cal. Apr. 21, 2011) ("[Defendant] contends that the [complaint]
27 does not assert a claim arising under the Lanham Act because the Lanham Act is
28 preempted by the California Uniform Trade Secrets Act.... This argument is wholly

1 unpersuasive and conflicts with fundamental precepts of constitutional law.") (citing
2 *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 612 (1979) ("For even though
3 [the Supremacy] Clause is not a source of any federal rights, it does 'secure' federal
4 rights by according them priority whenever they come in conflict with state law")). The
5 Motion to Dismiss the first cause of action is denied.

6       The third cause of action alleges unfair competition pursuant to California
7 Business & Professions Code § 17200. The third cause of action is based upon
8 allegations that "IK Tech and Kazhdan defamed B.I.P. by alleging B.I.P. counterfeited
9 Norsat's products." (First Am. Countercl. ¶ 33, ECF No. 38; *see also id*. ¶¶ 34-35).
10 These allegations do not form the basis of the fourth cause of action for
11 misappropriation of trade secrets in violation of CUTSA. *Cf. id*. ¶¶ 39-44.
12 Accordingly, the third cause of action is not "based on the identical nucleus of facts as
13 [the] trade secrets misappropriation claim," and is not preempted by CUTSA. *Ali*, 544
14 F. Supp. 2d at 1070. The Motion to Dismiss the third cause of action is denied.

15       The fifth cause of action alleges intentional interference with economic
16 advantage. This cause of action is at least in part based upon the allegation that "IK
17 Tech and Igor Kazhdan had signed non-disclosure agreements for B.I.P. promising not
18 to disclose or misappropriate any trade secrets, including customer lists." (First Am.
19 Countercl. ¶ 47, ECF No. 38). This allegation related to the non-disclosure agreement
20 does not form the basis of the fourth cause of action for misappropriation of trade
21 secrets in violation of CUTSA. *Cf. id*. ¶¶ 39-44. The fifth cause of action is not
22 preempted by CUTSA because the fifth cause of action is based, in part, on a contract,
23 *see* Cal. Civ. Code § 3426.7(b), and the fifth cause of action is not "based on the
24 identical nucleus of facts as [the] trade secrets misappropriation claim." *Ali*, 544 F.
25 Supp. 2d at 1070. The Motion to Dismiss the fifth cause of action is denied.

26     **B.  Motion for Preliminary Injunction**

27       "[A] preliminary injunction is an extraordinary and drastic remedy, one that
28 should not be granted unless the movant, *by a clear showing*, carries the burden of

1  persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). "A
2  plaintiff seeking a preliminary injunction must establish that he is likely to succeed on
3  the merits, that he is likely to suffer irreparable harm in the absence of preliminary
4  relief, that the balance of equities tips in his favor, and that an injunction is in the public
5  interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations
6  omitted).

7  "[T]he person or entity seeking injunctive relief must demonstrate that irreparable
8  injury is *likely* in the absence of an injunction. An injunction will not issue if the person
9  or entity seeking injunctive relief shows a mere possibility of some remote future injury,
10 or a conjectural or hypothetical injury." *Park Vill. Apartment Tenants Ass'n v.*
11 *Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011) (quotations omitted); *see*
12 *also Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)
13 ("At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that
14 it will be exposed to irreparable harm. Speculative injury does not constitute irreparable
15 injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more
16 than merely allege imminent harm sufficient to establish standing; a plaintiff must
17 *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive
18 relief.") (citations omitted). "Typically, monetary harm does not constitute irreparable
19 harm.... Economic damages are not traditionally considered irreparable *because the*
20 *injury can later be remedied by a damage award.*" *Cal. Pharmacists Ass'n v. Maxwell-*
21 *Jolly*, 563 F.3d 847, 851-52 (9th Cir. 2009) (citing, *inter alia, Sampson v. Murray*, 415
22 U.S. 61, 90 (1974) ("[I]t seems clear that the temporary loss of income, ultimately to
23 be recovered, does not usually constitute irreparable injury.... The possibility that
24 adequate compensatory or other corrective relief will be available at a later date, in the
25 ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

26 Courts have "recognized that intangible injuries, such as damage to ongoing
27 recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-Center, Inc. v.*
28 *Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citation

1  omitted). Although "[e]vidence of threatened loss of prospective customers or goodwill
2  certainly supports a finding of the possibility of irreparable harm," *Stuhlbarg*
3  *International Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir.
4  2001), "[s]peculative injury does not constitute irreparable injury." *Goldie's Bookstore,*
5  *Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984); *see also*
6  *Baldrige*, 844 F.2d at 674 (same).

7      Al Hatset's declaration states that the IK Tech parties "retained — and likely
8  used — a B.I.P. customer list," solicited and made "derogatory statements" to B.I.P.'s
9  customers, and "began to sell products to B.I.P. customers." (Al Hatset Decl. ¶¶ 5, 8,
10 ECF No. 44-2). However, the evidence submitted by B.I.P. fails to specifically identify
11 any lost customers or the content and date of any solicitations or derogatory statements.[3]
12 The Court finds Al Hatset's declaration to be conclusory and insufficient to support a
13 finding of irreparable injury. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
14 750 F.2d 1470, 1473 (9th Cir. 1985) ("affidavits [that] are conclusory and without
15 sufficient support in fact" will not support a finding of irreparable injury); *see also*
16 *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)
17 (insufficient showing of irreparable injury when "the principal shareholder of plaintiff's
18 parent corporation ... stated [in an affidavit] that defendants' use of exclusivity
19 provisions caused plaintiff's market share to decrease," because the affidavit "provided
20 only conclusory statements and [the affiant] was an interested party").

21     B.I.P.'s evidence fails to specify when B.I.P. learned that the IK Tech parties
22 "began to sell products to B.I.P. customers," or when "B.I.P. ... received numerous
23 versions of [IK Tech's] email [which solicited business from B.I.P. customers]." (Al
24 Hatset Decl. ¶¶ 5, 7, ECF No. 44-2). In B.I.P.'s original Counterclaim filed on October
25 3, 2012, B.I.P. alleged: "In 2010, B.I.P. cut ties with Kazhdan. IK Tech and Kazhdan
26 began to sell Norsat products to B.I.P. customers. Those same customers stopped

---

28     [3] The evidence submitted in support of the Motion for Preliminary Injunction (as opposed to the allegations in the First Amended Counterclaim) does not indicate that the IK Tech parties told any B.I.P. customers that B.I.P. counterfeited products.

buying products from B.I.P.... B.I.P. believes that IK Tech and Kazhdan made false and derogatory comments about B.I.P. to its former customers to gain their business." (ECF No. 12 ¶ 16). Despite alleging that the IK Tech parties were wrongfully soliciting and selling products to B.I.P.'s customers—which is the irreparable harm alleged in the Motion for Preliminary Injunction—the original Counterclaim only sought monetary damages and declaratory relief. Over seven months later, on May 24, 2013, B.I.P. filed the First Amended Counterclaim, which sought injunctive relief for the first time, in addition to monetary damages. (ECF No. 38). B.I.P. did not file the Motion for Preliminary Injunction until August 15, 2013, over ten months after B.I.P. first alleged that the IK Tech parties were wrongfully soliciting and selling products to B.I.P.'s customers. (ECF No. 45).

B.I.P.'s delay in seeking preliminary injunctive relief and its failure to specify when it learned of IK Tech's solicitation of B.I.P. customers undercuts its current argument of immediate, irreparable harm. *Cf. Oakland Tribune, Inc.*, 762 F.2d at 1377 ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213-14 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1090 (C.D. Cal. 1999) ("[Plaintiff]'s [five-month] delay in seeking injunctive relief further demonstrates the lack of any irreparable harm."), *aff'd*, 202 F.3d 278 (9th Cir. 1999); *Valeo Intellectual Prop., Inc. v. Data Dep't Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) ("A three-month delay in seeking injunctive relief is inconsistent with [plaintiff]'s insistence that it faces irreparable harm.").

The Court finds that B.I.P. has failed to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Park Vill. Apartment Tenants Ass'n*, 636 F.3d at 1160 (quotation omitted). Because B.I.P. has failed to meet its burden of demonstrating that irreparable injury is likely in the absence of an injunction, the Court

1  "need not decide whether [B.I.P.] is likely to succeed on the merits." *Oakland Tribune*,
2  762 F.2d at 1376 ("Under any formulation of the test, plaintiff must demonstrate that
3  there exists a significant threat of irreparable injury. Because the [plaintiff] has not
4  made that minimum showing we need not decide whether it is likely to succeed on the
5  merits.") (citations omitted); *see also Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d
6  935, 937 (9th Cir. 1987) (same). The Motion for Preliminary Injunction is denied.

**III.  Conclusion**

IT IS HEREBY ORDERED that the Motion to Dismiss First Amended Counterclaim is DENIED (ECF No. 41), and the Motion for Temporary Restraining Order and Preliminary Injunction is DENIED (ECF No. 45).

DATED: October 3, 2013

**WILLIAM Q. HAYES**
United States District Judge