# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORSAT INTERNATIONAL, INC., <br><br>                    Plaintiff,<br>vs.<br>B.I.P. CORPORATION,<br><br>                    Defendant.<br>_____<br>B.I.P. CORPORATION,<br><br>                  Counterclaimant,<br>vs.<br>NORSAT INTERNATIONAL, INC.;<br>IK TECH; IGOR KAZHDAN aka<br>ALEX STANTON, an individual, and<br>DOES 1 through 20, inclusive,<br><br>                  Counter-Defendants.<br>_____<br>And Related Counterclaims. | CASE NO. 12cv674-WQH-NLS<br><br>ORDER |

HAYES, Judge:

      The matter before the Court is the Motion for Summary Judgment or, Alternatively, Partial Summary Judgment ("Motion for Summary Judgment"), filed by Counter-Defendants IK Tech and Igor Kazhdan (ECF No. 56).

## I.    Background

      On March 30, 2012, Plaintiff Norsat International, Inc. ("Norsat") initiated this action by filing a Complaint against Defendant B.I.P. Corporation ("B.I.P."). (ECF No.

1  1).

2  On October 3, 2012, B.I.P. filed a Counterclaim against IK Tech and Igor
3  Kazhdan (collectively, "IK Tech parties"), and Norsat. (ECF No. 12).

4  On November 13, 2012, the IK Tech parties filed a Counterclaim against B.I.P.,
5  Actox Corporation ("Actox") and Nikita Hatset. (ECF No. 19). On December 3, 2012,
6  the IK Tech parties filed an Amended Counterclaim against B.I.P., Actox and Nikita
7  Hatset. (ECF No. 23).

8  On January 25, 2013, the Court granted a joint motion to dismiss filed by Norsat
9  and B.I.P., dismissing all of Norsat's claims against B.I.P. with prejudice and
10 dismissing all of B.I.P.'s counterclaims against Norsat with prejudice. (ECF No. 29).

11 On May 24, 2013, B.I.P. filed a First Amended Counterclaim against the IK Tech
12 parties. (ECF No. 38). B.I.P. alleges that Kazhdan, a former satellite
13 equipment/electronics salesperson for B.I.P., unlawfully solicited B.I.P.'s customers
14 and suppliers when Kazhdan left B.I.P. to establish a competing business named IK
15 Tech. B.I.P. asserts the following causes of action against the IK Tech parties: (1)
16 unfair competition under 15 U.S.C. §1125(a); (2) defamation (Cal. Civ. Code § 46(1));
17 (3) unfair competition (Cal. Bus. & Prof. Code § 17200); (4) misappropriation in
18 violation of the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426); and (5)
19 intentional interference with economic advantage.

20 On November 4, 2013, the Court granted a joint motion to dismiss filed by B.I.P.
21 and the IK Tech parties, dismissing B.I.P.'s second cause of action for defamation with
22 prejudice. (ECF No. 53).

23 On February 17, 2014, the IK Tech parties filed the Motion for Summary
24 Judgment. (ECF No. 56). The IK Tech parties contend they are entitled to summary
25 judgment pursuant to Federal Rule of Civil Procedure 56 as to all remaining claims
26 brought by B.I.P.

27 On March 10, 2014, B.I.P. filed an opposition to the Motion for Summary
28 Judgment. B.I.P. contends that the IK Tech parties are not entitled to summary

judgment or partial summary judgment because there are disputes as to material facts.

On March 17, 2014, the IK Tech parties filed a reply in support of the Motion for Summary Judgment. (ECF No. 58). On April 9, 2014, B.I.P. filed a "Response to New Evidence Put Forth in the Reply Brief." (ECF No. 60). On April 24, 2014, the IK Tech parties filed a "Request for Leave of Court to File Supplemental Brief in Response to B.I.P.'s Surreply and Objections to Declarations Submitted by B.I.P. in Surreply."[1] (ECF No. 61). On May 20, 2014, the Court conducted oral argument on the Motion for Summary Judgment. (ECF No. 63).

## II.    Evidentiary Materials

### A.    IK Tech Parties' Evidence

In support of the Motion for Summary Judgment, the IK Tech parties submit two declarations and attached exhibits. The IK Tech parties' attorney, Jason Black, submits a declaration stating that, "B.I.P. ultimately identified its 'customer and vendor lists' as the sole trade secrets at issue in this case." (Black Decl. ¶ 11, ECF No. 56-4 at 3). Black states that "B.I.P. was unable to produce any document that constituted its alleged 'customer' and/or 'vendor list' in response to discovery requests." *Id*. Black states: "As part of B.I.P.'s motion for a [temporary restraining order], B.I.P. submitted to the Court as an exhibit a redacted commission statement which B.I.P. has identified as its 'customer list' in this case." *Id*. The document, which is attached to the Motion for Summary Judgment as Exhibit F, lists sales apparently made by B.I.P. during July of 2010. (ECF No. 56-4).

Igor Kazhdan, IK Tech's owner, submits a declaration which states that what B.I.P. refers to as its "'customer lists' were actually just commission statements." (Kazhdan Decl. ¶ 4, ECF No. 56-3 at 3). Kazhdan states that "IK Tech and other contracting companies, including Anikita Corp. (operated by Nikita Hatset), were required to keep track of [their] own commissions." *Id*. at 2. The commission

---

[1] The unopposed Request for Leave of Court to File Supplemental Brief in Response to B.I.P.'s Surreply and Objections to Declarations Submitted by B.I.P. in Surreply is granted.

statements "were freely passed around, put together and distributed amongst all 'contractors' to determine how much each company would make each month. The commission statements were not password protected or held in a secure location - all contractors had easy and immediate access to them." *Id.* at 3. Kazhdan states that he "filed these documents away in IK Tech's records each month on the advice of [his] tax advisor because they were necessary for tax purposes and general recordkeeping." *Id.*

Kazhdan states that "[s]ince IK Tech's relationship with B.I.P. ended in approximately February of 2011 [he has] attended at least eight (8) trade shows for the satellite industry." *Id.* Igor Kazhdan states that he has "developed many relationships and friendships with people in the satellite industry over the years." *Id.*

Kazhdan states that since "IK Tech stopped working with B.I.P. in 2011 [he] sent a very simple announcement to people [he] worked with directly in the past. All of the announcement emails [Kazhdan] sent were exactly the same. [He] located their contact information through publically available means using internet searches of satellite related terms and trade journals." *Id.* The "announcement emails" stated: "I have left BIP Corporation as of Mar/1/2011 to pursue my own business goals. Please see below my new contact information. Kindest Regards, Alex Stanton," and lists a phone number and email address. *Id.* at 4, 6.

**B.     B.I.P.'s Evidence**

In opposition to the Motion for Summary Judgment, B.I.P. submits two declarations and attached exhibits. (ECF No. 57). B.I.P.'s attorney, David L. Skilling, submits a declaration stating that the IK Tech parties "produced a document showing a detailed customer list of B.I.P., complete with customer names, order information and pricing." (Skilling Decl. ¶ 4, ECF No. 57-5; *see also* ECF No. 56-4). Skilling states that "[h]undreds of emails have been produced by Kazhdan and IK Tech in response to discovery." (Skilling Decl. ¶ 6, ECF No. 57-5). The emails referenced by Skilling, which are attached to the opposition to the Motion for Summary Judgment as Exhibit C, are primarily comprised of the "announcement emails" sent by Kazhdan and certain

email exchanges which followed the "announcement emails." (ECF No. 57-6). Skilling states that "IK Tech [] produced numerous invoices showing sales it made to various entities" (Skilling Decl. ¶ 7, ECF No. 57-5); and "[he] reached a stipulation with [IK Tech's] attorney regarding an entity IK Tech sold products to named Pathfinder." *Id.* ¶ 8; *see also* ECF No. 57-7. Skilling states that "Kazhdan's counsel now refuses to make his client available to take [an] agreed-upon deposition [of Kazhdan]."[2] (Skilling Decl. ¶ 9, ECF No. 57-5).

Al Hatset, B.I.P.'s owner, submits a declaration which states that "Kazhdan contracted with B.I.P from 2004 to 2011. When he began conducting business with B.I.P. in 2004, Kazhdan signed a confidentiality and non-disclosure agreement." (Hatset Decl. ¶ 5, ECF No. 57-2; *see* ECF No. 57-4 (agreement)). Hatset states: "All other contractors and sales people with access to B.I.P. proprietary information, including customer information, have executed non-disclosure agreements." (Hatset Decl. ¶ 6, ECF No. 57-2). Hatset states:

> [O]nly Igor Kazhdan was preparing commission statement[s] based on the earnings and expenses statements prepared by B.I.P.'s accounting department. The tracking of sales and expenses is done by B.I.P.'s accounting department. The only independent contractor who had access to the commission statement was Igor Kazhdan as he created these on his own without permission. As such, the statements have never been intended to be accessible on any [of] B.I.P.'s commonly accessible computers. Kazhdan has never been authorized to keep [a] hard copy of these commission statements he made without permission, or save them on his private computer or any kind of storage devices.

*Id.* ¶ 7.

Hatset states that "[i]n 2011, B.I.P. cut ties with Kazhdan. Since that time, [the IK Tech parties] have begun to sell products exclusively to B.I.P. customers using the B.I.P. sales name, 'Alex Stanton.' IK Tech has utilized the B.I.P. customer database to make these sales. Many of those same customers stopped buying products from B.I.P., especially because [the IK Tech parties] would make derogatory statements and undercut B.I.P.'s prices." *Id.* ¶ 9; *see also id.* ¶ 11 ("B.I.P. has also learned that IK Tech

---

[2] The docket reflects that no discovery motions have been filed.

and Igor Kazhdan are using B.I.P.-created customer lists and supplier lists to lure customers away from B.I.P. to purchase their satellite needs with IK Tech instead."). Hatset states that "B.I.P. took reasonable precautions under the circumstances to prevent disclosure of the customer and supplier lists, including having all independent contractors such as [the IK Tech parties] who had access to the list sign non-disclosure agreements." *Id.* ¶ 11; *see also id.* ¶ 12.  Hatset states:

> IK Tech has repeatedly sent emails to former and current customers of B.I.P. by introducing itself as Alex Stanton, a former salesperson working with B.I.P. The emails then proceed to list prices significantly lower than B.I.P.'s standard pricing in an attempt to lure away B.I.P.'s customers. B.I.P. has received numerous versions of this email forwarded on by its clients. B.I.P. has also recently discovered that [the IK Tech parties] are using B.I.P.'s supplier lists. [The IK Tech parties] have been using these lists to purchase the same products as B.I.P. and sell to its customers.

*Id.* ¶ 13; *see also id.* ¶¶ 14-16, 21.

Hatset states: "In 2009 and 2010, B.I.P. sold over $500,000 in product to Pathfinder...[,] primary 20W Ku-Bank satellite transmitters, a fact not within the general public's knowledge." *Id.* ¶ 17. Hatset states: "During the time [the IK Tech parties] were working with B.I.P., they had access to the identity of Pathfinder, contact information, and buying habits. According to email correspondence produced by Kazhdan in this case, he and IK Tech solicited Pathfinder in April 2011. IK Tech has sold products to Pathfinder in 2011 and beyond. Not surprisingly, those products were the 20W Ku-Band satellite transmitters. In contrast, Pathfinder has not placed an order with B.I.P. since March 2011 because it was purchasing its products from IK Tech." *Id.* ¶ 17; *see also id.* ¶¶ 18-19.

### C.   IK Tech's Evidence in Reply

In the reply, the IK Tech parties submit two declarations and objections to B.I.P.'s evidence. Kazhdan states that "[n]either [Kazhdan] nor anyone else from IK Tech has ever made a derogatory remark or intentionally undercut B.I.P.'s prices using any of B.I.P.'s purported trade secret information in order to solicit a customer." (Kazhdan Decl. ¶ 3, ECF No. 58-1).  Kazhdan states that he has never "been aware of an actual customer list, vendor list or any other customer data base ... kept by B.I.P. All

1   work at B.I.P. was done by contractors like IK Tech. B.I.P. is really only one person -
2   Al Hatset. B.I.P. has no accounting department." *Id.* ¶ 4. Kazhdan states: "From April
3   9-14th ... in 2011, I, on behalf of IK Tech, attended the NAB show in Las Vegas, NV.
4   Pathfinder Digital LLC was an exhibitor in booth number SU950213.... During
5   discussions at the show, representatives from Pathfinder invited me to send them email
6   correspondence and advertisements and wished me and IK Tech good luck in separating
7   ourselves from B.I.P." *Id.* ¶ 6.

### D.   B.I.P.'s Evidence in Surreply

In surreply, B.I.P. submits two declarations. Ernest Kasparov, an employee of B.I.P., submits a declaration stating that in 2010 "Kazhdan tried to recruit me to leave working with B.I.P. and join him in a business venture. He told me that in this new venture, he planned to use B.I.P. supplier information to obtain product and planned to sell products to B.I.P. customers using information obtained from B.I.P.'s confidential database." (Kasparov Decl. ¶ 4, ECF No. 60-1). Hatset submits a declaration stating that "Pathfinder Digital LLC is one of dozens of B.I.P.'s customers IK Tech has done business with." (Hatset Decl. ¶ 11, ECF No. 60-2).

On April 24, 2014, the IK Tech parties filed objections to the declarations submitted by B.I.P. in surreply. (ECF No. 61).

### III.   Contentions of the Parties

The IK Tech parties contend that summary judgment should be granted as to B.I.P.'s fourth cause of action for misappropriation of trade secrets because (1) B.I.P. does not have a protectable trade secret; (2) B.I.P. cannot establish that the IK Tech parties used or disclosed any B.I.P. trade secret; and (3) B.I.P. cannot establish a causal connection between misappropriation and actual damages. (ECF No. 56-1 at 12, 18, 20-21). The IK Tech parties contend that summary judgment should be granted as to B.I.P.'s remaining causes of action for unfair competition under federal and California law and intentional interference with economic advantage because "no predicate wrongful act exists upon which to base those claims." *Id.* at 22.

1    B.I.P. contends that the IK Tech parties fail to meet their burden of showing no
2 genuine issues of fact exist.  (ECF No. 57 at 8).  B.I.P. contends that there is an issue
3 of fact as to whether the IK Tech parties used trade secret information in contacting and
4 soliciting B.I.P.'s customers.  *Id*. at 20-21.  Specifically, B.I.P. contends that the IK
5 Tech parties solicited Pathfinder, a B.I.P. customer, via email and, "armed with B.I.P.'s
6 confidential information," sold products to Pathfinder.  *Id*. at 12.  B.I.P. contends that
7 the remaining claims are not preempted by California Uniform Trade Secrets Act, and
8 the non-disclosure agreement signed by Kazhdan is enforceable.  *Id*. at 18-20.

9  **IV.    Discussion**
10    **A.    Standard of Review**
11    "A party may move for summary judgment, identifying each claim or
12 defense—or the part of each claim or defense—on which summary judgment is sought.
13 The court shall grant summary judgment if the movant shows that there is no genuine
14 dispute as to any material fact and the movant is entitled to judgment as a matter of
15 law."  Fed. R. Civ. P. 56(a).  A material fact is one that is relevant to an element of a
16 claim or defense and whose existence might affect the outcome of the suit.  *See*
17 *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The
18 materiality of a fact is determined by the substantive law governing the claim or
19 defense.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp.*
20 *v. Catrett*, 477 U.S. 317, 322 (1986).
21    The moving party has the initial burden of demonstrating that summary judgment
22 is proper.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  Where the party
23 moving for summary judgment does not bear the burden of proof at trial, "the burden
24 on the moving party may be discharged by 'showing'—that is, pointing out to the
25 district court—that there is an absence of evidence to support the nonmoving party's
26 case."  *Celotex*, 477 U.S. at 325; *see also United Steelworkers v. Phelps Dodge Corp.*,
27 865 F.2d 1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the
28 burden of proof, the defendant may move for summary judgment by pointing to the

absence of facts to support the plaintiff's claim.  The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof.") (quotation omitted).

If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted).  The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 256.

### B. Misappropriation of Trade Secrets

California has adopted the Uniform Trade Secrets Act ("UTSA"). *See* Cal. Civ. Code §§ 3426-3426.10. "Under the UTSA, a prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003) (citations omitted); *see also MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) ("To establish a violation under the UTSA, it must be shown that a defendant has been unjustly enriched by the improper appropriation, use or disclosure of a 'trade secret.'") (applying California law).

The UTSA defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that ... [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use;

and ... is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). Under certain circumstances, a customer list may constitute a protectable trade secret. *See MAI Sys. Corp.*, 991 F.2d at 521; *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521-22 (1997) ("[C]ourts are reluctant to protect customer lists to the extent they embody information which is 'readily available' through public sources, such as business directories. On the other hand, where the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market.").

The UTSA defines "misappropriation" as:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

    (A) Used improper means to acquire knowledge of the trade secret; or

    (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

        (i) Derived from or through a person who had utilized improper means to acquire it;

        (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use....

Cal. Civ. Code § 3426.1(b). "Mere possession of trade secrets by a departing employee" is not sufficient to establish misappropriation or show injury. *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1279 (2009) (citing *Central Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 528-29 (2008)). "The UTSA definition of 'misappropriation' has been clarified by case law which establishes that the right to *announce* a new affiliation, even to trade secret clients of a former employer, is basic to an individual's right to engage in fair competition, and that the common law right to compete fairly and the right to announce a new business affiliation have survived the enactment of the UTSA." *MAI Sys. Corp.*, 991 F.2d at 521 (citing *Am. Credit Indem.*

*Co. v. Sacks*, 213 Cal. App. 3d 622, 633-34 (1989)). "However, misappropriation occurs if information from a customer database is used to *solicit* customers." *Id.* (citing *Aetna Bldg. Maint. Co. v. West*, 39 Cal. 2d 198 (1952); *Am. Credit Indem. Co.*, 213 Cal. App. 3d at 633-34). The California Supreme Court has stated:

> Merely informing customers of one's former employer of a change of employment, without more, is not solicitation. Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee. Equity will not enjoin a former employee from receiving business from the customers of his former employer, even though the circumstances be such that he should be prohibited from soliciting such business.

*Aetna Bldg. Maint. Co.*, 39 Cal. 2d at 204 (citation omitted); *see also Hilb, Rogal & Hamilton Ins. Servs. v. Robb*, 33 Cal. App. 4th 1812, 1821-22 (1995) (same); *Am. Credit Indem. Co.*, 213 Cal. App. 3d at 634 (same).

The Court assumes without deciding that B.I.P. has produced sufficient evidence for a reasonable factfinder to conclude that B.I.P.'s customer information constitutes a trade secret. The Court considers whether there is a genuine issue of material fact as to whether the IK Tech parties misappropriated the trade secrets and whether any misappropriation damaged B.I.P. *See Sargent Fletcher, Inc.*, 110 Cal. App. 4th at 1665.

Kazhdan submits a declaration stating that when the IK Tech parties left B.I.P. in 2011, Kazhdan "sent a very simple announcement to people I had worked with directly in the past." (Kazhdan Decl. ¶ 7, ECF No. 56-3). Kazhdan asserts that all of the "announcement emails" were the same, and he located the recipient's contact information through publically-available means. *Id.* The "announcement emails" were sent in April 2011, and stated that Kazhdan (using the name Alex Stanton) "left BIP Corporation as of Mar/1/2011 to pursue [his] own business goals" and lists Kazhdan's contact information. (ECF No. 57-6 at 4). Many of the recipients of the "announcement emails" responded by asking questions about Kazhdan's new business or asking for a price quote for particular products. *See id.* at 4-23. The "announcement emails" and Kazhdan's subsequent responses to follow-up inquiries are not sufficient for a jury to find misappropriation. *See Hilb, Rogal & Hamilton Ins. Servs.*, 33 Cal.

App. 4th at 1821 ("[E]ven assuming that Hilb's customer list and other client information constitute trade secrets, ... the evidence before the trial court does not support the conclusion that Robb misused them. He lawfully informed some of Hilb's clients of his change in employment and then complied with their instructions to move their accounts or to seek a quote on a desired type of insurance."); *see also Aetna Bldg. Maint. Co.*, 39 Cal. 2d at 204 ("Merely informing customers of one's former employer of a change of employment, without more, is not solicitation. Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee."); *Am. Credit Indem. Co.*, 213 Cal. App. 3d at 634 (same).

B.I.P. produces one email, sent on October 21, 2011 (six months after the "announcement emails" were sent), which a jury could reasonably find crosses the line from announcing Kazhdan's new affiliation to actively soliciting. *See* ECF No. 57-6 at 3 (October 21, 2011 email);[3] *see also Am. Credit Indem. Co.*, 213 Cal. App. 3d at 636-37 ("Although the letter begins as an announcement of her departure from ACI and

---

[3] The October 21, 2011 emails states:

> Allow me to introduce myself, my name is Alex Stanton and I am the CEO of IK Tech Corporation. We have worked together in the past when I was with BIP Corporation.
>
> We are one of the biggest VSAT distributors for BUCs, LNBs, Modems, Antennas and accessories, such as waveguides, terminations, power supplies, connectors and BiasT's. We have partnered with U.S. Monolithics, which is a subsidiary of Viasat and can offer very aggressive prices on VSAT products since they are being procured through Viasat purchasing channels. We offer products from USM, Norsat, NJRC, Mitec, Wavestream, Belcom, iDirect, Viasat, Skyware Global and Datum modems.
>
> We strongly believe you could take advantage of the special pricing offered by our company. You are welcome to send us quote requests for products you have already purchased so you may compare the prices you have received from other suppliers with ours.
>
> For a full list of products that we carry please visit our website - www.iktechcorp.com. The website is still being updated, but we should have all of the products there by the end of October.
>
> We look forward to working with you.

(ECF No. 57-6 at 3).

affiliation with F&D, it soon assumes a different tone. Sacks informs ACI's customers of the interesting competitive alternative F&D offers as compared to ACI's policies.... She personally petitions, importunes and entreats ACI's customers to call her at any time for information about the better policies F&D can provide and for assistance during the agent transition period.... Sacks, in a word, solicited."). The name of the recipient of the October 21, 2011 email is redacted, and there is no evidence of (1) who received this email, (2) whether the recipient's identity could be construed by a reasonable jury as a trade secret of B.I.P., and (3) whether the recipient ever made a purchase from Kazhdan/IK Tech and/or stopped purchasing from B.I.P.

The IK Tech parties adequately met their initial burden of "pointing out ... that there is an absence of evidence" to show a causal connection between misappropriation and actual damages. *Celotex*, 477 U.S. at 325; *see* ECF No. 56-1 at 20-21. B.I.P. has the burden of producing evidence from which a jury could reasonably infer that the IK Tech parties' misappropriation of trade secrets damaged B.I.P. *See Sargent Fletcher, Inc.*, 110 Cal. App. 4th at 1665; *see also MAI Sys. Corp.*, 991 F.2d at 520. Even assuming that evidence of the October 21, 2011 email would be sufficient for a jury to find that the IK Tech parties misappropriated B.I.P.'s trade secret, B.I.P. has failed to produce admissible evidence indicating that B.I.P. was damaged by the October 21, 2011 email and/or the IK Tech parties were unjustly enriched by the October 21, 2011 email.[4]

B.I.P.'s owner, Hatset, submits a declaration stating that the IK Tech parties "are

---

[4] B.I.P. submits evidence that the IK Tech parties have sold products to one former B.I.P. customer, Pathfinder, after Kazhdan left B.I.P. in February 2011. (ECF No. 57-7 at 3). The IK Tech parties have submitted uncontradicted evidence that Kazhdan attended a trade show in Las Vegas on April 9-14, 2011 where Pathfinder was an exhibitor, and at that trade show "Pathfinder invited [the IK Tech parties] to send them email correspondence and advertisements." (Kazhdan Decl. ¶ 6, ECF No. 58-1). B.I.P. contends that this statement is contradicted by evidence that Kazhdan sent the "announcement email" to Pathfinder on April 11, 2011. (ECF No. 60-2 at 8; *see also* ECF No. 60 at 4). The Court does not find that B.I.P.'s evidence is sufficient to create a genuine issue of material fact as to whether the IK Tech parties wrongfully solicited business from Pathfinder in violation of the rule announced in *Aetna Bldg. Maint. Co.*, 39 Cal. 2d at 204.

using B.I.P.-created customer lists and supplier lists to lure customers away from B.I.P. to purchase their satellite needs with IK Tech instead." (Hatset Decl. ¶ 11, ECF No. 57-2; *see also id*. ¶¶ 9-19; Suppl. Hatset Decl. ¶ 11, ECF No. 60-2). The IK Tech parties object to these statements on the basis that, *inter alia*, Hatset "has set forth no basis for such knowledge." (ECF No. 58-4 at 5; *see also id*. at 3-10; ECF No. 61-1 at 5-6). These objections are sustained. *See Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412-13 (9th Cir. 1995) (declarations based on information and belief were "entitled to no weight" at summary judgment stage because there were no facts to establish personal knowledge). Although B.I.P. was afforded an opportunity to respond to these objections, B.I.P. offers no basis for Hatset's personal knowledge of IK Tech's customers other than a general reference to "email[s] forwarded on by [B.I.P.'s] clients" and "emails disclosed by Kazhdan and IK Tech in discovery." (Hatset Decl. ¶¶ 13, 21, ECF No. 57-2). To the extent Hatset references emails he has seen but which have not been filed or identified in this action, the IK Tech parties' hearsay objections, *see* ECF No. 58-4 at 9, are sustained. The emails which have been filed speak for themselves and are summarized above.

B.I.P. submits an affidavit from a current B.I.P. employee who asserts that in 2010, while Kazhdan was still employed by B.I.P., Kazhdan tried to recruit him to join Kazhdan in leaving B.I.P. with a plan to "use B.I.P. supplier information to obtain product and ... to sell products to B.I.P. customers using information obtained from B.I.P.'s confidential database." (Kasparov Decl. ¶ 4, ECF No. 60-1). This evidence does not create an issue of fact as to whether Kazhdan, a year later, acted in violation of the rule announced in *Aetna Bldg. Maint. Co.*, 39 Cal. 2d at 204.

The motion for summary judgment as to B.I.P.'s claim for misappropriation of trade secrets is granted.

### C. Intentional Interference with Economic Advantage

To state a claim for intentional interference with economic advantage (also known as intentional interference with prospective economic advantage), a plaintiff

must allege: (1) an existing economic relationship or one containing the probability of future economic benefit; (2) knowledge by the defendant of the relationship; (3) acts by defendant designed to disrupt the relationship; (4) actual disruption of the relationship; (5) damages proximately caused by the acts of the defendant. *See Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal. 4th 376, 380 n.1 & 392-93 (1995). With respect to the third element, the act must be "wrongful by some legal measure other than the fact of interference itself." *Id.* at 393 (quotation omitted).

The IK Tech parties contend that B.I.P.'s claim for intentional interference with economic advantage "should be dismissed as a matter of law because no predicate wrongful act exists upon which to base [the] claim[]." (ECF No. 56-1 at 22; *see also* ECF No. 56 at 2). Because B.I.P. would bear the burden of proof at trial, the IK Tech parties' summary judgment burden was "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also United Steelworkers*, 865 F.2d at 1542-43. Therefore, B.I.P. has the burden of "go[ing] beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial" as to the claim for intentional interference with economic advantage. *Celotex*, 477 U.S. at 324 (quotations omitted).

In opposition to the motion for summary judgment, B.I.P. does not address the IK Tech parties' contention that "no predicate wrongful act exists upon which to base" the claim for intentional interference with economic advantage. (ECF No. 56-1 at 22). B.I.P. contends that the cause of action for intentional interference with economic advantage is "not preempted by [the California] UTSA." (ECF No. 57 at 19). Otherwise, B.I.P. does not address the claim for intentional interference with economic advantage in its opposition papers. B.I.P. does not address how the evidence in the record creates a genuine issue of material fact as to each element of the claim. In particular, B.I.P. fails to submit evidence showing a genuine issue of material fact as

to an act by Kazhdan or IK Tech that is "wrongful by some legal measure other than the fact of interference itself," and proximately caused damages to B.I.P. *Della Penna*, 11 Cal. 4th at 393. The motion for summary judgment as to B.I.P.'s claim for intentional interference with economic advantage is granted.

### D.    Lanham Act, 15 U.S.C. § 1125(a)

B.I.P.'s First Amended Counterclaim alleges a violation of the Lanham Act, 15 U.S.C. § 1125(a). (ECF No. 38 ¶¶ 16-22). Section 1125(a) provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citation omitted).

The IK Tech parties move for summary judgment as to the claim for violation of the Lanham Act, 15 U.S.C. § 1125(a), and contend that the claim "should be dismissed as a matter of law because no predicate wrongful act exists upon which to base [the] claim[]." (ECF No. 56-1 at 22; *see also* ECF No. 56 at 2). The Court finds that the IK Tech parties discharged their initial summary judgment burden by pointing out in the moving papers "that there is an absence of evidence to support" B.I.P.'s Lanham Act claim. *Celotex*, 477 U.S. at 325. B.I.P. has the burden of "go[ing] beyond the pleadings

and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial" as to the Lanham Act claim. *Id.* at 324.

In opposition to the motion for summary judgment, B.I.P. does not address the IK Tech parties' contention that "no predicate wrongful act exists upon which to base" the Lanham Act claim. (ECF No. 56-1 at 22). B.I.P. asserts that "B.I.P.'s Lanham Act claim is based on federal law and thus cannot be preempted by state laws such as [the California] UTSA." (ECF No. 57 at 19). Otherwise, B.I.P. does not address its Lanham Act claim in its opposition papers. B.I.P. submits no evidence of "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" made or used by the IK Tech parties, as required by 15 U.S.C. § 1125(a). Hatset states in his declaration that many of B.I.P.'s former customers "stopped buying products from B.I.P., especially because [the IK Tech parties] would make derogatory statements and undercut B.I.P.'s prices." (Hatset Decl. ¶ 9, ECF No. 57-2). Hatset does not identify the "derogatory statements" or assert that the statements were false or misleading. The Court finds that B.I.P. has failed to "designate specific facts showing that there is a genuine issue for trial" as to the Lanham Act claim. *Celotex*, 477 U.S. at 324. The motion for summary judgment as to B.I.P.'s claim for violation of the Lanham Act is granted.

**E.    California Business & Professions Code § 17200**

In B.I.P.'s claim for unfair competition in violation of California Business & Professions Code § 17200, B.I.P. alleges:

> On or about February 2012, IK Tech and Kazhdan defamed B.I.P. by alleging B.I.P. counterfeited Norsat's products.
>
> IK Tech and Kazhdan knew that their statements were false and that B.I.P. has never counterfeited any of Norsat's products but made such statements in the hopes that Norsat and its customers would do business with IK Tech instead of B.I.P.
>
> B.I.P. is informed and believes and thereon alleges that the [IK Tech parties] have failed and refused, and continues to fail and refuse, to retract the derogatory statements regarding B.I.P. B.I.P. is also informed and believes and thereon alleges that the [IK Tech parties] have and are

> continuing to improperly use B.I.P.'s trade secrets, including customer lists to solicit B.I.P. customers.

(ECF No. 38 ¶¶ 33-35).

The IK Tech parties contend that summary judgment should be granted as to B.I.P.'s § 17200 claim because (1) the § 17200 claim is preempted by the California UTSA, and/or (2) "no predicate wrongful act exists upon which to base" the § 17200 claim. (ECF No. 56-1 at 22). B.I.P. contends that the California UTSA does not preempt the § 17200 claim because the § 17200 claim "is based on ... [the IK Tech parties'] derogatory comments, not trade secret violations." (ECF No. 57 at 19).

The Court finds that the IK Tech parties discharged their initial summary judgment burden by pointing out in the moving papers "that there is an absence of evidence to support" B.I.P.'s § 17200 claim. *Celotex*, 477 U.S. at 325. B.I.P. has the burden of "go[ing] beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial" as to the § 17200 claim. *Id*. at 324. B.I.P. has failed to submit any evidence indicating that either Kazhdan or IK Tech made false statements that B.I.P. counterfeited Norsat's products. To the extent the § 17200 claim is premised on allegations of defamatory statements related to counterfeiting Norsat products, summary judgment must be granted.

The sole remaining basis for the § 17200 claim is the misappropriation of trade secrets. As discussed above, B.I.P. has failed to submit admissible evidence showing a genuine issue of material fact as to its claim for misappropriation of trade secrets. Even if there was a genuine issue of material fact as to B.I.P.'s claim for misappropriation, the § 17200 claim would be preempted by the California UTSA to the extent it is "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (quotation omitted); *see also id*. at 958-59, 961-62 (holding that the California UTSA preempted the plaintiff's § 17200 claim premised on allegations of misappropriation of trade secrets); *see also Digital Envoy, Inc. v.*

*Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) ("[T]he Court finds that California's [UTSA], ... preempts Digital's claims for unfair competition ... since those claims are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief."). Accordingly, the motion for summary judgment as to the § 17200 claim is granted.

**V.   Conclusion**

IT IS HEREBY ORDERED that the Motion for Summary Judgment is GRANTED. (ECF No. 56). The Request for Leave of Court to File Supplemental Brief in Response to B.I.P.'s Surreply and Objections to Declarations Submitted by B.I.P. in Surreply is GRANTED. (ECF No. 61).

IT IS FURTHER ORDERED that the remaining dates set in the May 29, 2013 Order of the Magistrate Judge are reset as follows with respect to the IK Tech parties' Amended Counterclaim against B.I.P., Actox and Nikita Hatset:

1. Counsel shall comply with the pre-trial disclosure requirements of Federal Rule of Civil Procedure 26(a)(3) by June 10, 2014. Failure to comply with these disclosure requirements could result in evidence preclusion or other sanctions under Federal Rule of Civil Procedure 37.

2. Counsel shall meet and take the action required by Local Rule 16.1(f)(4) by June 18, 2014. At this meeting, counsel shall discuss and attempt to enter into stipulations and agreements resulting in simplification of the triable issues. Counsel shall exchange copies and/or display all exhibits other than those to be used for impeachment. The exhibits shall be prepared in accordance with Local Rule 16.1(f)(4)(c). Counsel shall note any objections they have to any other parties' Pretrial Disclosures under Federal Rules of Civil Procedure 26(a)(3). Counsel shall cooperate in the preparation of the proposed pretrial conference order.

3. Counsel for the the IK Tech parties will be responsible for preparing the pretrial order and arranging the meetings of counsel pursuant to Civil Local Rule 16.1(f).

|   |   |   |
|---|---|---|
| 1 |  | By June 26, 2014, the IK Tech parties' counsel must provide opposing counsel with the proposed pretrial order for review and approval. Opposing counsel must communicate promptly with the IK Tech parties' attorney concerning any objections to form or content of the pretrial order, and all parties shall attempt promptly to resolve their differences, if any, concerning the order. |
| 6 | 4. | The Proposed Final Pretrial Conference Order, including objections to any other parties' Federal Rule 26(a)(3) Pretrial Disclosures shall be filed with the Clerk of the Court, and e-mailed to efile_hayes@casd.uscourts.gov in WordPerfect or Word format by July 3, 2014, and shall be in the form prescribed in and comply with Local Rule 16.1(f)(6). |
| 11 | 5. | The final Pretrial Conference is set for July 11, 2014, at 11:00 a.m. in Courtroom 14B. |

DATED:  May 30, 2014

*[signature: William Q. Hayes]*
**WILLIAM Q. HAYES**
United States District Judge